UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JESSICA TURNER o/b/o AT,

              Plaintiff,                     Case No. 2:17-CV-13523
                                            District Judge Nancy G. Edmunds
v.                                      Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

              Defendant.
_____/

**<u>REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT (DE 15), GRANT DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DE 17) and AFFIRM THE
COMMISSIONER'S DECISION</u>**

**I.**    **RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (DE 15), **GRANT** Defendant's motion for summary judgment (DE 17),

and **AFFIRM** the Commissioner's decision.

**II.**    **REPORT**

        Plaintiff, Jessica Turner, on behalf of her minor child, A.T., brings this

action under 42 U.S.C. §§ 405(g) for review of a final decision of the

Commissioner of Social Security ("Commissioner") denying her application for

supplemental security income (SSI) benefits.  This matter is before the United

States Magistrate Judge for a Report and Recommendation on Plaintiff's motion for summary judgment (DE 15), the Commissioner's cross-motion for summary judgment (DE 17), and the administrative record (DE 11).

### A.    Background and Administrative History

On June 17, 2014, Plaintiff protectively filed an application for supplemental security income on behalf of her minor daughter, A.T., alleging that A.T. has been disabled since January 20, 2014.  (R. at 207-12.)  In her disability report, she alleges that A.T. was disabled due to ADHD.  (R. at 217.)  Her application was denied on October 1, 2014.  (R. at 123-26.)

On October 7, 2014, Plaintiff requested a hearing by an Administrative Law Judge ("ALJ").  (R. at 127-29.)  On June 24, 2016, ALJ Kari Deming held a hearing, at which Plaintiff testified.  (R. at 82-113.)  ALJ Deming issued an opinion on August 3, 2016, which determined that A.T. was not disabled within the meaning of the Social Security Act.  (R. at 53-69.)

On September 30, 2016, Plaintiff submitted a request for review of ALJ Deming's decision/order.  (R. at 205-06.)  However, on September 28, 2017, the Appeals Council denied Plaintiff's request for review.  (R. at 1-6.)  Thus, ALJ Deming's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on October 30, 2017.

### B.    Plaintiff's Medical and Education Evidence

2

The administrative record contains approximately 150 pages of medical and educational records that were available to ALJ Deming at the time of her August 3, 2016 decision.  (R. at 249-68, 275-406 [Exhibits 11E-12E, 1F – 8F].)  These materials be discussed in detail, as necessary, below.

### C.    The Administrative Decision

#### 1.    Framework for Child Disability Determinations

A child under age eighteen is considered "disabled" within the meaning of the Act if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i).  The Commissioner determines whether a child is disabled by analyzing three sequential steps: first, the child must not be engaged in "substantial gainful activity;" second, the child must have a "severe" impairment;[1] and third, the severe impairment must meet, medically equal, or functionally equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings").  *See* 20 C.F.R. § 416.924(a).  To "meet" a listed impairment, a child must demonstrate both the "A" and "B"

_____

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 1520(c); 920(c).

criteria of the impairment.  In addition, to be found disabled based on meeting a listed impairment, the claimant must exhibit all the elements of the listing.  *See Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003).  If a child's impairment does not meet a listed impairment, the impairment may be medically or functionally equal in severity and duration to the medical criteria of a listed impairment.  20 C.F.R. § 416.926a.

To determine functional equivalence, there are six "domains" that an ALJ considers, which are listed and discussed in greater detail *infra*.  Functional equivalence is demonstrated by the existence of an "extreme" limitation in one of the six domains, or a "marked" limitation in two of the six.  20 C.F.R. § 416.926a(d).  An extreme limitation is one that interferes "very seriously" with these abilities.  If the impairment or combination of impairments does not meet or medically or functionally equal a listing, the child is not disabled.  20 C.F.R. § 416.924(a).

### 2.    The ALJ's Decision

Applying this framework, the ALJ concluded that A.T. was not disabled.  At **Step 1**, she determined that A.T. had not engaged in substantial gainful activity since June 17, 2014 and was a preschooler.  (R. at 59.)

4

At **Step 2**, the ALJ identified the following severe impairments: borderline intellectual functioning, auditory perception disorder and attention deficit hyperactivity disorder (ADHD).  (*Id*.)

At **Step 3**, the ALJ found that A.T.'s severe impairments did not meet or medically equal a listed impairment.  (*Id*.)  She further found A.T's impairments did not functionally equal a listed impairment.  (R. at 60-69.)  In making this determination, the ALJ determined that A.T. had less than marked limitations in the domains of: 1) acquiring and using information; 2) attending and completing tasks; 3) interacting and relating with others; and, 4); and caring for herself.  (*Id*.) She concluded that A.T. had no limitation in the domains of moving about and manipulating objects and health and physical well-being.  (*Id*.)

### D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under

this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or

6

deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting

*Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.     Analysis

Plaintiff identifies two claims of error: (1) whether the ALJ properly

determined that A.T.'s borderline intellectual functioning impairment did not meet

Listing 112.05; and (2) whether substantial evidence supports the ALJ's finding

that A.T. did not functionally meet the severity of a listing.  (DE 15 at 7-15.)  The

Commissioner opposes Plaintiff's motion, asserting that substantial evidence

supports the Commissioner's decision.  (DE 17 at 6-16.)  I will address each

argument in turn.

### 1.     The ALJ properly found that A.T. did not meet Listing 112.05

The ALJ found that "[w]hile the medical record establishes the Claimant's

borderline intellectual functioning, the evidence does not satisfy the criteria of

section 112.05," and explains that "[w]hile the record contains a valid IQ score of

70, the record does not demonstrate a marked impairment in any of the following:

cognitive/communicative functioning; social functioning; personal functioning; or

maintaining concentration, persistence, and pace." (R. at 59, citing R. at 299.)

Plaintiff argues that the ALJ failed to properly assess whether A.T. has an

impairment that meets or medically equals Listing 112.05.  (DE 15 at 8-13.)  The

Commissioner responds that the ALJ's determination that the medical record

evidence does not satisfy the criteria of Listing 112.05, despite A.T's impairment of borderline intellectual functioning, is supported by substantial evidence.  (DE 17 at 6-12.)

Plaintiff bears the burden of demonstrating that an impairment meets a listed impairment at Step 3.  *Foster v. Halter*, 279 F.3d  348, 354 (6th Cir. 2001).  In *Smith-Johnson v. Commissioner of Social Security*, 579 F. App'x 426 (6th Cir. 2014), the Sixth Circuit explained that "[a] claimant must do more than point to evidence on which the ALJ *could have based* his finding to raise a substantial question as to whether he has satisfied a listing."  *Id.* at 432 (emphasis added).  "Rather, the claimant must point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing."  *Id.*  "For a claimant to show that [her] impairment matches a listing, it must meet all of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  "If the record raises a substantial question whether a claimant could qualify as disabled under a listing, an ALJ must compare the medical evidence with the requirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any listed impairment."  *Battaglini v. Comm'r of Soc. Sec.*, No. 4:15 CV 1454, 2016 WL 5232635, at *6 (N.D. Ohio Sept. 22, 2016).  But an error at Step 3 is harmless if

the claimant has not shown that his impairment meets or medically equals a listed impairment. *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014).

First, as the Commissioner properly points out, Plaintiff incorrectly refers to the requirements of Listing 112.05 that went into effect in January 2017, and not the effective version of that Listing at the time of the ALJ's 2016 decision. (See DE 15 at 10-11.) The applicable version of Listing 112.05 provided, in relevant part:

> **112.05 Intellectual Disability**: Characterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, D, E, or F are satisfied.
>
> A. For … children (age 3 to attainment of age 18), resulting in at least two of the appropriate age-group criteria in paragraph B2 of 112.02;[2]

---

[2] The criteria contained in Paragraph (B)(2) of Section 112.02 is as follows:

> a. Marked impairment in age-appropriate cognitive/communicative function, documented by medical findings (including consideration of historical and other information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized psychological tests, or for children under age 6, by appropriate tests of language and communication; or
>
> b. Marked impairment in age-appropriate social functioning, documented by history and medical findings (including consideration of information from

9

OR

B. Mental incapacity evidenced by dependence upon others for personal needs (grossly in excess of age-appropriate dependence) and inability to follow directions such that the use of standardized measures of intellectual functioning is precluded;

OR

C. A valid verbal, performance, or full scale IQ of 59 or less;

OR

D. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function;

OR

E. A valid verbal, performance, or full scale IQ of 60 through 70 and:

***

2. For children (age 3 to attainment of age 18), resulting in at least one of paragraphs B2b or B2c or B2d of 112.02;

---

parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized tests; or

c. Marked impairment in age-appropriate personal functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, appropriate standardized tests; or

d. Deficiencies of concentration, persistence, or pace resulting in frequent failure to complete tasks in a timely manner.

OR

F. Select the appropriate age group:

***

2. For children (age 3 to attainment of age 18), resulting in the satisfaction of 112.02B2a, and a physical or other mental impairment imposing an additional and significant limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.05 (effective 1/2/01 through 1/16/17).

In support of her argument that she meets Listing 112.05, Plaintiff asserts that "the record contains a valid full scale IQ score of 70." (DE 15 at 11-12, citing R. at 299.) She also claims that she has a "marked limitation in understanding, remembering, or applying information" (*id.* at 12, citing R. at 34, 299), and that she had an extreme or at least marked limitation in concentrating, persisting and maintaining pace, "as evidenced by a diagnosis of ADHD and residual limitations." (*Id.* at 12-13, citing R. at 30, 33, 287, 328.)

Even though Plaintiff does not refer to the correct version of Listing 112.05 in her motion, it appears that she would be arguing that she meets subsections D or E of the applicable Listing, both of which require, in addition to "significantly subaverage general intellectual functioning" with "deficits in adaptive functioning," a "valid verbal, performance or full scale IQ of 60 through 70." Subsection D also requires a "physical or other impairment imposing an additional and significant limitation of function," and section E also requires a marked

11

impairment in age-appropriate social functioning or personal functioning or marked difficulties in maintaining concentration, persistence or pace.

In order to meet Listing 112.05(D) or (E) (or indeed any subsection in Listing 112.05), Plaintiff must satisfy the criteria found in the introductory clause of Listing 112.05 and demonstrate "significantly subaverage general intellectual functioning with deficits in adaptive functioning."[3] *See Foster*, 279 F.3d at 354 (claimant must demonstrate that her impairment satisfies the diagnostic description for the listed impairment).  Plaintiff fails to address this requirement (even though it was also stated in the version of Listing 112.05 she cited in her motion) and fails to otherwise point to any record evidence demonstrating *significant subaverage* intellectual functioning with deficits in adaptive functioning.

The ALJ, however, found that the medical record evidence establishes that Plaintiff functioned in the *borderline* intellectual functioning range.  (R. at 59.) The ALJ notes that consulting examiner Nick Boneff, Ph.D. opined that A.T.'s overall cognitive functioning fell into the "generally borderline range of intellectual functioning, although she received solidly average scores on two of the three performance subtests," and <u>she did not evidence any significant cognitive</u>

---

[3] I note that the new version of the regulation cited by Plaintiff still requires that a claimant have significantly subaverage intellectual functioning and significant deficits in current adaptive functioning.  *See*  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.05 (effective January 17, 2017).

12

impairments. (R. at 62, citing R. at 296-99.) Dr. Boneff diagnosed A.T. with

"adjustment disorder, mild; learning disability, mild." (R. at 299.) The Sixth

Circuit has specifically found that functioning in the borderline range is not

sufficient to meet the requirement of significantly subaverage general intellectual

functioning found in Listing 112.05. *See Barnett ex rel. D.B. v. Comm'r of Soc.

Sec.*, 573 F. App'x 461, 463 (6th Cir. 2014) (distinguishing "borderline"

performance from "significantly subaverage general intellectual functioning").

The ALJ also gave great weight to the opinion of the State agency

psychiatric consultant, Zahra Khademian, M.D., "a duly qualified mental health

professional by virtue of his education and training as an expert in disability

evaluation," who opined that A.T. does not suffer from an impairment or

combination of impairments that meet or medical equal a listing. (R. at 62, 117.)

Dr. Khademian also opined that A.T. "has less than marked limitation in acquiring

and using information, attending and completing tasks, interacting with others, and

caring for herself." (R. at 62, citing R. at 114-21.) Plaintiff does not address this

opinion in her motion.

ALJ Deming further recognized that Dr. Khademian's opinion was

consistent with later developed evidence, including the assessment of A.T.'s

teacher, who taught A.T. from September 2015 through February 2016 and

"reported only an obvious problem in providing organized oral explanations and

13

descriptions and a slight problem in expressing ideas in written form," but otherwise "noted no problem in the Claimant's ability to acquire and use information." (R. at 62, citing R. at 250.) The teacher's assessment of A.T.'s ability "to attend and complete tasks, interact and relate with others, and care for herself only included a few ratings of slight problems, but otherwise noted no problem." (*Id.*, citing R. at 251-54.)

While Dr. Boneff indicated A.T. had a full scale IQ of 70, and he diagnosed a mild learning disorder, a low IQ score, alone, is not enough to establish subaverage intelligence functioning, because "[f]inding otherwise would 'collapse[] the Listing's first requirement (significantly subaverage general intellectual functioning) into its third (an IQ score between 60 and 70).'" *Gater, o/b/o J.G. v. Comm'r of Soc. Sec.*, No. 17-12375, 2018 WL 4517619, at *3 (E.D. Mich. Aug. 13, 2018) (quoting *Barnett* 573 F. App'x at 463)[4], *report and recommendation adopted*, 2018 WL 4509658 (E.D. Mich. Sept. 20, 2018). Further, it is well established that a diagnosis of ADHD and/or placement in a special education classroom does not equate with a finding that a claimant has significantly subaverage intellectual functioning. *See Barnett*, 573 F. App'x at 463

---

[4] As the Sixth Circuit stated in *Barnett*, this rejected statutory interpretation "runs afoul of the interpretive canon that requires us to try to give meaning to every word in a statute or regulation." *Barnett*, 573 F. App'x at 463 (citing *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)).

14

(claimant enrolled in special education but did not qualify for Listing 112.05);

*Foster*, 279 F.3d at 352; *see also Gater*, 2018 WL 4517619, at *3 (plaintiff failed

to establish meeting Listing 112.05(D) despite a full scale IQ of 62 and ADHD

diagnosis and special education classes because she failed to address the criteria set

forth in the introductory clause of the Listing) (citing *Fitzpatrick v. Comm'r of Soc.*

*Sec.*, No. 1:16-CV-01, 2016 WL 7334842, at *6 (W.D. Mich. Dec. 19, 2016)

(rejecting claimant's Listing 112.05(D) argument because she "makes a cursory

argument noting that M.V.F. has an IQ score of 68, an additional impairment of

ADHD, and has problems with adaptive functioning, but makes no attempt to

argue M.V.F. suffers from significantly subaverage general intellectual

functioning)).  Plaintiff therefore has failed to present evidence that she meets all

of the requirements of Listing 112.05.

Finally, to the extent Plaintiff argues that the ALJ erred by not finding that

A.T.'s impairments medically equaled a listing, she failed to develop this argument

and it is deemed waived.  *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir.

1997) (citations omitted) ("[I]ssues adverted to in a perfunctory manner,

unaccompanied by some effort at developed argumentation, are deemed waived.").

Accordingly, the ALJ's finding that A.T. did not meet or medically equal

Listing 112.05 is supported by substantial evidence, and Plaintiff's claim of error

should be denied.  The fact that the ALJ's analysis and findings are included in her

discussion of functional equivalence rather than earlier in the decision is not harmful error. *See Forrest*, 591 F. App'x at 366 (finding no error where "the ALJ made sufficient factual findings elsewhere in his decision to support his conclusion at step three.").

> **2.    Substantial evidence supports the ALJ's finding that A.T.'s impairments do not functionally equal the severity of the Listings**

To determine whether a child claimant suffers from an impairment which is the functional equivalent of a listed impairment, the ALJ must evaluate how the child functions in each of six domains of functioning described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(a)-(b). The six domains of functioning are:

>   (i) acquiring and using information;

>   (ii) attending and completing tasks;

>   (iii) interacting and relating with others;

>   (iv) moving about and manipulating objects;

>   (v) caring for yourself; and

>   (vi) health and physical well-being.

*Id.* § 416.926a(b)(1). As explained earlier, to be considered disabled, the child's impairments must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. *Id.* § 416.926a(a). A domain has "marked"

16

limitations when an impairment interferes seriously with the child's ability to independently initiate, sustain, or complete activities. *Id.* § 416.926a(e)(2). A domain has "extreme" limitations when an impairment interferes very seriously with the child's ability to independently initiate, sustain, or complete activities. *Id.* § 416.926a(e)(3).

ALJ Deming considered the six functional domains and found that A.T. experienced less than marked limitations in: acquiring and completing tasks; attending and completing tasks; interacting and relating with others; and, caring for oneself. (R. at 63-68.) Additionally, she determined that A.T. experience no limitations in: moving about and manipulating objects and health and physical well-being. (R. at 67, 69.)

Plaintiff argues that the ALJ's findings that A.T. had less than marked limitations in (1) acquiring and using information and (2) attending and completing tasks are not supported by substantial evidence. (DE 15 at 13-15.) The Commissioner responds that the ALJ's findings are supported by substantial evidence. (DE 17 at 12-16.) The Undersigned agrees with the Commissioner.

### a.    Acquiring and using information

The domain of acquiring and using information refers to how well the child acquires or learns information and how well the child uses the information she has

learned. 20 C.F.R. § 416.926a(g).   With respect to this functional domain, ALJ

Deming found that:

> The Claimant has less than marked limitation in acquiring and using
> information. Consultative examiner Nick Boneff Ph.D. diagnosed the
> Claimant with a learning disability due to the Claimant's not
> demonstrating any emerging reading skills as would he expected. The
> Claimant was unable to identify any letters or write her name.
> Additionally, the Claimant's Full scale IQ score of 70 placed her in a
> generally borderline range of intellectual functioning. He considered
> the condition to be mild, however, because her overall cognitive
> functioning fell into at least the mid borderline range and she did not
> evidence any significant cognitive impairments (Ex. 4F/1-4). The
> teacher's assessment also supports a mild assessment. Ms. Juelem
> noted that the Claimant was reading and performing math at grade level
> and had no problem comprehending oral instructions, understanding
> school and content vocabulary or understanding and participating in
> class discussion. She did note an obvious problem with providing oral
> explanations and adequate descriptions, and such deficits are
> adequately reflected in above assessment of less than marked limitation
> of the Claimant's ability to acquire and use information (Ex. 11E/2).

(R. at 64.)  ALJ Deming further recognized that the State agency consultant, Dr.

Khademian, opined that A.T. had less than marked limitation in acquiring and

using information, and that A.T.'s teacher opined that A.T. had an obvious

problem with providing organized oral explanations and adequate descriptions and

a slight problem expressing ideas in written form, but otherwise had no problems

in her ability to acquire and use information.  (R. at 62, citing R. at  118, 250.)

ALJ Deming afforded both of these opinions great weight.  (R. at 62.)  The ALJ

thus cited substantial evidence to support her finding that A.T. had less than

marked limitations in acquiring and using information. *See Cutlip*, 25 F.3d at 286

18

("If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion.").

Plaintiff does not challenge these findings, but instead primarily cites to evidence that was not before the ALJ. Specifically, Plaintiff cites to an April 2017 psychological evaluation and summary by the school psychologist. (DE 15 at 14, citing R. at 34.) However, as the Commissioner correctly points out, the Appeals Council declined to admit this evidence because it was related to a subsequent period after the ALJ's August 2016 decision. (R. at 2.) It is well established that where, as here, the Appeals Council denies review and the ALJ's decision becomes the Commissioner's final decision, the court's review is limited to the evidence presented to the ALJ. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 478 (6th Cir. 2003); *Foster*, 279 F.3d at 357 ("[T]his court has repeatedly held that evidence submitted to the Appeals Council after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review."); *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). Plaintiff does not argue that this evidence is new, material and that good cause exists for failure to incorporate this evidence at the administrative level, and accordingly has waived this argument. *McPherson*, 125 F.3d at 995-96.

Substantial evidence thus supports the ALJ's finding that A.T. has less than marked limitation in acquiring and using information, and Plaintiff's claim of error should be denied.

### b.   Attending and completing tasks

The domain of attending and completing tasks refers to "how well you are able to focus and maintain your attention, and how well you begin, carry through, and finish your activities, including the pace at which you perform activities and the ease with which you change them." 20 C.F.R. § 416.926a(h). The ALJ found with respect to this functional domain that:

> The Claimant has less than marked limitation in attending and completing tasks. The hearing testimony included statements that the Claimant begins asking questions and talking after ten minutes of viewing a television program. The Claimant's mother further reported that the Claimant runs and bounces around due to hyperactivity. She further stated that the Claimant's school calls home because of her hyperactivity and loud behavior. At times, the medical record includes mental status examinations that revealed impaired attention and concentration, uncooperative behavior and attitude as well as an excited mood and impaired recent and remoted memory (Ex. 7F/12, 27). *Generally, however, such abnormal signs are early in the record.* Mental status examinations *later* in the record, following the prescription for Clonidine and Melatonin, show that the Claimant has been responsive to treatment and has more restrained behavior. Regularly, mental status examination showed the Claimant to be calm, have a normal range and intensity of affect, and normal attention and concentration (Ex. 7F/33, 37, 40-41, 49, 52-53 ). The Claimant's prescriptions have remained consistent and the reports to treating sources include much fewer instances of behavior problems. Finally, the Claimant's teacher only noted slight problems with careless mistakes and distracting self or others (Ex. 11E/3). The totality of the

evidence supports only a less than marked limitation in attending and completing tasks.

(R. at 65 (emphases added).)  Further, the ALJ recognized that the State agency

consultant, Dr. Khademian, opined that A.T. had less than marked limitation in

attending and completing tasks, and that A.T.'s teacher otherwise noted no other

problems with attending and completing tasks.  (R. at 62, citing R. at 118, 251.)

ALJ Deming afforded both of these opinions great weight.  (R. at 62.)  These facts

suffice to provide substantial evidence in support of the ALJ's finding that A.T.

has less than marked limitations in attending and completing tasks.  *See Barnett*,

573 F. App'x at 464 ("We must 'accept the agency's factual finding []' when it is

supported by substantial evidence, even when substantial evidence could justify a

different result.") (citing *Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992)).  As

above, Plaintiff does not challenge these findings but instead improperly relies,

again, on the April 2017 psychological evaluation and summary by the school

psychologist, which the Appeals Council declined to admit, to argue that A.T.

experienced marked or extreme limitations in attending and completing tasks.  (DE

15 at 14, citing R. at 30,33.)  This evidence was not before the ALJ and cannot be

considered here.  *See Jones*, 336 F.3d at 478 (the court's review is limited to the

evidence presented to the ALJ).

Accordingly, Plaintiff has failed to show that A.T. experienced a marked limitation or extreme limitation in attending and completing tasks, and her claim of error should be denied.

### F.    Conclusion

The ALJ's decision was supported by substantial evidence, and no legal error which would lead to a different result has been shown.  For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (DE 15), **GRANT** Defendant's motion for summary judgment (DE 17), and **AFFIRM** the Commissioner of Social Security's decision.

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," *etc.*  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc.*  If the Court determines that any objections are without

merit, it may rule without awaiting the response.

Dated:  February 1, 2019          s/*Anthony P. Patti*
                                   Anthony P. Patti
                                   UNITED STATES MAGISTRATE JUDGE

### Certificate of Service

I hereby certify that a copy of the foregoing document was sent to parties of record on February 1, 2019, electronically and/or by U.S. Mail.

                                   s/Michael Williams
                                   Case Manager for the
                                   Honorable Anthony P. Patti

23